UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
00 JUN 28 PM 3: 57
U.S. DISTRICT COURT
N.D. OF ALABAMA

JAN EADY, individually and     )
on behalf of all similarly     )
situated taxpayers of          )
Jefferson County, Alabama,     )
                               )
    Plaintiff,                 )
                               )
vs.                            )    Civil Action No. CV-00-S-1065-S
                               )
DON SIEGELMAN et al.,          )
                               )
    Defendants.                )

ENTERED
JUN 28 2000

## MEMORANDUM OPINION

Plaintiff, Jan Eady, filed this suit in the United States District Court for the Middle District of Alabama on February 22, 2000. It was transferred to this court on April 21, 2000.

Plaintiff claims to represent all taxpayers residing in Jefferson County, Alabama. She sues nine defendants under 42 U.S.C. § 1983,[1] all in their official capacities: Don Siegelman, the Governor of the State of Alabama; Lucy Baxley, the State Treasurer; George Mingledorff, the State Revenue Commissioner;

---

[1] 42 U.S.C. § 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994) (citations and internal quotation marks omitted).

Robert Childree, the State Comptroller; and all members of the Jefferson County Commission.[2]

Plaintiff alleges that the Jefferson County Sheriff and his deputies are state officers,[3] but Alabama law imposes responsibility for paying their salaries upon county taxpayers.[4] She contends this statutory scheme constitutes an unconstitutional taking of "property" from Jefferson County taxpayers without due process of law, in violation of the Fourteenth Amendment to the

---

[2] Official capacity suits, as distinguished from individual capacity suits, "are deemed to be against the entity of which the officer is an agent." Lassiter v. Alabama A&M University, 3 F.3d 1482, 1485 (11th Cir. 1993). See also Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) ("Personal [or individual]-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (citations omitted); Brandon v. Holt, 469 U.S. 464, 471, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985) (noting that victory by a plaintiff in an official capacity suit "imposes liability on the entity that [the officer] represents"). While defendants Siegelman, Baxley, Mingledorff, and Childree represent the State of Alabama, the defendant Jefferson County Commissioners are agents of Jefferson County. See Welch v. Laney, 57 F.3d 1004, 1009 (11th Cir. 1995).

[3] The Alabama Constitution provides that "[t]he executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, <u>and a sheriff for each county</u>." Ala. Const. of 1901, Art. V, § 112 (emphasis supplied).
Federal and state case law also establishes that Alabama sheriffs and their deputies are State officers, at least when performing certain activities. See McMillian v. Monroe County, Alabama, 520 U.S. 781, 787, 117 S.Ct. 1734, 1738, 138 L.Ed.2d 1 (1997) (holding that Alabama sheriffs act on behalf of the State, not the county from which they are elected, when performing law enforcement duties); Turquitt v. Jefferson County, Alabama, 137 F.3d 1285, 1292 (11th Cir. 1998) (en banc) (holding that Alabama sheriffs act for the State in their daily management of county jails), cert. denied, 525 U.S. 874, 119 S.Ct. 174, 142 L.Ed.2d 142 (1998); see also Parker v. Amerson, 519 So. 2d 442, 442-43 (Ala. 1987) ("A sheriff is not an employee of a county for purposes of imposing liability on the county under a theory of respondeat superior.").

[4] For example, Alabama Code § 36-22-16(a) (1975) declares in pertinent part that the "[s]heriffs of the several counties in this state shall be compensated for their services by an annual salary payable in equal installments out of the county treasury as the salaries of other county employees are paid."

2

United States Constitution.[5] She asks this court to enjoin enforcement of Alabama Code § 36-22-16(a),[6] and to impose fiscal responsibility for the salaries of the Jefferson County Sheriff and his deputies upon the State of Alabama.[7]

The action presently is before the court on motions to dismiss filed by all but one defendant.[8] Those motions implicate two

---

[5] The Fourteenth Amendment to the United States Constitution provides, in relevant part, that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

[6] See *supra* note 4.

[7] Plaintiff first requests declaratory and injunctive relief:

> A declaratory judgment holding [that] the defendants['] procedure for requiring a county, by and through the levy of taxes on its taxpayers to fund the salary of the [S]heriff and his deputies is illegal and unconstitutional. The plaintiff would further seek as part of such declaratory judgment an order requiring the defendants to cease and desist enforcement of further application of § 36-22-16 Code of Alabama 1975 other than as specifically provided for in said constitutional provision, as well as an [o]rder requiring Jefferson County by and through its [C]ounty [C]ommissioner to cease and desist from further payments of the Sheriff and deputies.

Complaint ¶ 31(a). (Implicit in that request for relief is an understanding that the State, not the county, would be responsible for compensating the Jefferson County Sheriff and deputies from the date of judgment forward.) Plaintiff also seeks an award of retrospective monetary relief; that is,

> An order directing the defendants to immediately make an accounting of the total amount of revenues raised or appropriated within Jefferson County for the sheriffs' and deputies' salaries [in] every year since 1969, when the compensation statute was inserted.
>
> An order directing the [S]tate of Alabama to immediately establish a fund in the amount of all illegally appropriated funds for the purpose of payment to the taxpayers who were caused to pay additional taxes, as damages for any period wherein Article 5 § 112 of the Constitution of Alabama was violated.

*Id.* ¶ 31(c)-(d) (emphasis supplied).

[8] George Mingledorff, the State Revenue Commissioner, nevertheless asserts in his answer that plaintiff's complaint fails to state a claim upon which relief

3

complex subjects in federal jurisprudence, the Eleventh Amendment and the concept of substantive due process.[9]

## I. ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment provides that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The amendment was adopted to repudiate the Supreme Court's decision in *Chisholm v. Georgia*, 2 Dall. (2 U.S.) 419 (1793), which upheld the right of a citizen of one state to sue another state in an action originally

---

can be granted.

[9] The court is aware of the bar to federal jurisdiction present in the Tax Injunction Act, which provides that the "District Courts shall not enjoin, suspend or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. *See also* Moe v. Confederated Salish and Kootenai Tribe of the Flathead Reservation, 425 U.S. 463, 470, 96 S.Ct. 1634, 1640, 48 L.Ed.2d 96 (1976) (denominating the Tax Injunction Act as a "jurisdictional rule"). The court is further aware that the Tax Injunction Act applies with equal force to the establishment of local taxes by a county or municipality. *See* Jefferson County v. Acker, 137 F.3d 1314, 1318 n.4 (11th Cir. 1998). Defendants do not raise the issue of whether the Tax Injunction Act prohibits this court from entertaining plaintiff's claims, however. Nevertheless, this court recognizes its duty to examine jurisdictional issues *sua sponte*.

Plaintiff purportedly represents a class consisting of the taxpayers residing in Jefferson County, and continually references the issue of taxes in her complaint. At bottom, however, the primary purpose behind plaintiff's lawsuit is to have Alabama Code § 36-22-16(a) declared unconstitutional, and impose the duty of compensation of Alabama sheriffs and deputy sheriffs on the State of Alabama. *See* Colonial Pipeline Company v. Collins, 921 F.2d 1237, 1243 n.8 (11th Cir. 1991) (citing *Missouri v. Jenkins*, 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990), among others, for the proposition that "a federal court has only a circumscribed power to interfere with a state's taxation system in order to remedy constitutional violations arising from causes independent of the taxation scheme"). The potential impact on state and local tax structures is speculative and incidental. *See* Pendleton v. Heard, 824 F.2d 448, 451-52 (5th Cir. 1987). Moreover, the federalism concerns that form the basis of the Tax Injunction Act are addressed *infra*, at the conclusion of Section II.

4

filed in the Supreme Court. Even though the express language of that amendment prohibits only suits against a state in federal courts "by Citizens of another State,"[10] it nevertheless has been consistently interpreted as providing that a state cannot be sued in federal courts by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S.Ct. 504, 506-07, 33 L.Ed. 842 (1890). That interpretation represents an incorporation of "the nonconstitutional but ancient doctrine of sovereign immunity." *Fitzpatrick v. Bitzer*, 427 U.S. 445, 457, 96 S.Ct. 2666, 2672, 49 L.Ed.2d 614 (1975) (Brennan, J., concurring).

The Eleventh Amendment shields a state from suit in federal court in all but three circumstances:

> (1) when a state waives its Eleventh Amendment sovereign immunity and consents to suit in federal court ...; (2) when Congress, acting pursuant to § 5 of the Fourteenth Amendment, abrogates a state's Eleventh Amendment sovereign immunity by expressing an unequivocal intent to do so ...; and (3) when a state official is sued for prospective injunctive relief to end a continuing violation of federal law ....

*Harbert International, Inc. v. James*, 157 F.3d 1271, 1278 (11th Cir. 1998) (citations omitted). Unless one of those three exceptions applies, the Eleventh Amendment shields not only the

---

[10] *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 457, 96 S.Ct. 2666, 2672, 49 L.Ed.2d 614 (1975) (Brennan, J., concurring) (noting that, by its terms, the Eleventh Amendment "bars only federal-court suits against States by citizens of other States").

State of Alabama itself from federal court actions, but also state officials sued in an official capacity. That is because an action for money damages against a state official in his or her official capacity is tantamount to a suit against the state itself and, absent waiver or consent, the Eleventh Amendment bar remains intact. *See Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. ... As such, it is no different from a suit against the State itself."); *see also Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) ("[T]he Eleventh Amendment prohibits suits against state officials where the state is, in fact, the real party in interest.") (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-02, 104 S.Ct. 900, 908-09, 79 L.Ed.2d 67 (1984)).[11]

---

[11] In support of dismissal, defendants continually reference the Supreme Court's decision in *Pennhurst State School & Hospital* and the Eleventh Circuit's decision in *Silver v. Baggiano*, 804 F.2d 1211 (11th Cir. 1986), for the proposition that this court lacks jurisdiction to instruct state officials like defendants Siegelman, Baxley, Mingledorff, and Childree on how to conform their conduct to <u>state</u> law. *See Pennhurst State School & Hospital*, 465 U.S. at 106, 104 S.Ct. at 911 ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment."); *Silver*, 804 F.2d at 1213 (adopting defendant's argument that plaintiff "cannot bring his claims based on the Alabama Constitution or statutes in federal court"). While that is an accurate statement of law, it is not precisely implicated here. Plaintiff consistently references the incompatibility of the Alabama constitutional

6

In *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court drew a distinction between retrospective monetary relief and prospective injunctive relief, holding that the Eleventh Amendment prohibited recovery of the former, but permitted enforcement of the latter against a state. The *Edelman* Court based its conclusions upon *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.2d 714 (1908), "a watershed case in which the Court held that the Eleventh Amendment did not bar an action in the federal courts seeking to enjoin the Attorney General of Minnesota from enforcing a [state] statute claimed to violate the Fourteenth Amendment of the United States Constitution." *Edelman*, 415 U.S. at 664, 94 S.Ct. at 1356. In contrast to *Ex parte Young*, the plaintiff in *Edelman* sought monetary relief for past wrongs committed by state officials in the administration of federal-state programs for Aid to the Aged, Blind, or Disabled.

> As in most areas of the law, the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night. The injunction issued in *Ex parte Young* was not totally without effect on the State's revenues, since the state law which the Attorney General was enjoined from enforcing provided

---

provision denominating sheriffs as members of the state's "executive department" with the Alabama statutory provision requiring counties to pay the salaries of sheriffs and their deputies, but <u>she does not state a cause of action arising under the law of the State of Alabama</u>. Rather, plaintiff contends Alabama Code § 36-22-16(a) deprives her of property without due process of law, in violation of the Fourteenth Amendment to the United States Constitution. Such a claim is discussed *infra*, in Section II.

7

> substantial monetary penalties against railroads which did not conform to its provisions. Later cases from this Court have authorized equitable relief which has probably had greater impact on state treasuries than did that awarded in *Ex parte Young*. ... <u>But the fiscal consequences to state treasuries in these cases were the necessary result of compliance with decrees which by their terms were prospective in nature</u>. State officials, in order to shape their official conduct to the mandate of the Court's decrees, would more likely have to spend money from the state treasury than if they had been left free to pursue their previous course of conduct. <u>Such an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young, supra*</u>.
>
> But that portion of the District Court's decree which petitioner challenges on Eleventh Amendment grounds goes much further than any of the cases cited. It requires payment of state funds, <u>not as a necessary consequence of compliance in the future with a substantive federal-question determination</u>, but as a form of compensation to those whose [public aid] applications were processed on the slower time schedule at a time when petitioner was under no court-imposed obligation to conform to a different standard.

*Edelman*, 415 U.S. at 667-68, 94 S.Ct. at 1357-58 (emphasis supplied).

Plaintiff in the present action seeks retrospective monetary relief from the State of Alabama when asking this court to order the State to establish a "fund in the amount of all illegally appropriated funds for the purpose of payment to the taxpayers who were caused to pay additional taxes, as damages for any period wherein Article 5 § 112 of the Constitution of Alabama was

8

violated."[12]  *Edelman* clearly prohibits such a remedy.[13]

Plaintiff's request for prospective injunctive relief, on the other hand, implicates additional concerns articulated by the Supreme Court in *Edelman*. The practical effect of an order declaring Alabama Code § 36-22-16(a) unconstitutional will be to shift fiscal responsibility for compensating the Jefferson County Sheriff and his deputies from the county to the State. The dispositive question as far as Eleventh Amendment immunity is concerned thus becomes whether such a shift represents "an ancillary effect on the state treasury," resulting as a "necessary consequence of compliance in the future with a substantive federal-question determination." *Edelman*, 415 U.S. at 668, 94 S.Ct. at 1358. This court is inclined to hold that the injunctive relief sought by plaintiff would have far more than a mere "ancillary effect on the state treasury." Alabama Code § 36-22-16(a) is a

---

[12] Complaint ¶ 31(d).

[13] *Nota bene* that plaintiff explicitly asks the State of Alabama, not Jefferson County, to establish the remuneration fund. That request is perplexing, given that Jefferson County was responsible for collecting the taxes that ultimately were paid as compensation to its sheriff and his deputies. Had plaintiff requested the county to set up the fund and disburse the appropriated back payments, the Eleventh Amendment would not be implicated, even though plaintiff seeks retrospective monetary relief. *See Edelman*, 415 U.S. at 667 n.12, 94 S.Ct. at 1358 n.12 (recognizing "the long-established rule that while county action is generally state action for purposes of the Fourteenth Amendment, a county defendant is not necessarily a state defendant for purposes of the Eleventh Amendment"); Carr v. City of Florence, Alabama, 916 F.2d 1521, 1527 (11th Cir. 1990) (Clark, J. specially concurring) ("If in fact Alabama counties pay their sheriffs' and deputies' judgments, no Eleventh Amendment factors would be implicated — the sovereignty of the state of Alabama would not be impugned — and sheriffs and deputies should therefore have no official immunity.").

9

legislative act of general application, applicable to all 67 counties of the State. Accordingly, a judgment against defendants effectively would shift massive fiscal responsibilities to the State. The State defendants have tied this court's hands, however, by inexplicably conceding that plaintiff's request for prospective injunctive relief is not barred by the Eleventh Amendment.[14] Accordingly, the court turns to plaintiff's constitutional claims.

## II. SUBSTANTIVE DUE PROCESS

The basis for plaintiff's Fourteenth Amendment claims is not clearly stated. This lack of clarity does not trouble the court in its analysis, however, because any contention by plaintiff premised on either procedural due process or equal protection necessarily fails.

As to procedural due process, defendants accurately point out that "[w]hen a legislature enacts a law ... that affects a general class of persons, all of those persons have received procedural due process by the legislative process itself and they have no right to individual attention. The challenges to such laws ... must be based on their substantive compatibility with constitutional guarantees." *United States v. LULAC*, 793 F.2d 636, 648 (5th Cir.

---

[14] "Defendants do not dispute that the Plaintiff has requested relief that, if granted, would be of future impact; part of the relief Plaintiff seeks is, in fact, prospective and equitable in nature." Response of the Attorney General to Court's Request for Supplemental Brief in support of Motions to Dismiss of Defendants Siegelman, Childree, Baxley, and Mingeldorff [sic] (Doc. No. 8), at 8-9 (citing Complaint ¶ 31(a)-(b)).

1986). The statute at issue is a general legislative enactment, applicable to all counties and citizens of the State of Alabama.

Plaintiff's claims also do not implicate the equal protection clause, because she fails to allege that she, or the putative class she purports to represent, is treated in a disparate manner relative to other citizens residing in the state with respect to Alabama Code § 36-22-16(a). That statute simply does not implicate equal protection concerns: "[C]ourts use the concept of substantive due process to review the ability of government to restrict the freedom of action (regarding life, liberty, or property) of all persons. Equal protection analysis is applicable when the judiciary is called upon to review a governmentally established classification." 2 Ronald D. Rotunda and John E. Nowak, *Treatise on Constitutional Law: Substance and Procedure* § 15.4, at 596 (3d ed. 1999).

This leads to plaintiff's substantive due process challenge to Alabama Code § 36-22-16(a).[15] The Eleventh Circuit's decision in *Silver v. Baggiano*, 804 F.2d 1211 (11th Cir. 1986), is relevant in

---

[15] Plaintiff also inserts "takings" language into her complaint. The Fifth Amendment to the United States Constitution provides that private property shall not be taken for public use without just compensation. *See* U.S. Const. amend. V. "The principles of the Fifth Amendment just compensation clause are applied to the states[,] although it is unclear whether it is incorporated into the Fourteenth Amendment or whether the Amendments's due process clause merely has an identical meaning to that provision." 2 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law: Substance and Procedure* § 15.6, at 621 (3d ed. 1999).

11

that context.[16] In *Silver*, the plaintiff was a podiatrist who sued both individually and on behalf of a class of similarly situated podiatrists. He claimed the Commissioner of the Alabama Medicaid Agency violated the Fourteenth Amendment by establishing "a policy of denying Medicaid reimbursements to licensed podiatrists while at the same time reimbursing medical doctors for podiatric services." *Id.* at 1213. The Eleventh Circuit concluded that Silver's substantive due process claim was without merit.

> Similarly, in order to satisfy substantive due process requirements, the legislation must be rationally related to its purpose and must not be arbitrary or discriminatory. Silver has not alleged that this policy involves any suspect classification or fundamental right. Without specifically stating its reason for this policy, Alabama has asserted that the decision not to reimburse podiatrists has a rational basis. "Where ... there are plausible reasons for [the legislature's] action, our inquiry is at an end. It is, of course, 'constitutionally irrelevant whether this reasoning in fact underlay the legislative decision,' ... because [the Supreme Court] has never insisted that a legislative body articulate its reasons for enacting a statute."

*Id.* at 1218 (citations and footnote omitted) (bracketed information in original).

The same logic applies here. Plaintiff does not allege that Alabama Code § 36-22-16(a) violates a fundamental right or involves a suspect classification. Accordingly, Alabama Code § 36-22-16(a) is subject to rational basis review.

---

[16] *Compare* note 11 *supra*.

The rational basis standard requires a court to ask whether a legitimate governmental interest supports the legislation, and, whether the resulting state statute bears a rational relation to that interest. *See Reno v. Flores*, 507 U.S. 292, 302-05, 113 S.Ct. 1439, 1447-49, 123 L.Ed.2d 1 (1993). For such a relationship to exist, the nexus between the state interest and the law at issue must be reasonable, and thus not arbitrary, capricious, or irrational. *See Village of Euclid v. Ambler Realty Company*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed.2d 303 (1926).

The Supreme Court has prescribed the application of certain principles that assures a deferential review. Such principles include: presuming the validity of challenged legislation, *see Heller v. Doe*, 509 U.S. 312, 319, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993); not requiring that the legislature "actually articulate ... a purpose or rationale" supporting the legislation, *id.* at 320, 113 S.Ct. at 2642 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 15, 112 S.Ct. 2326, 2334, 120 L.Ed.2d 1 (1992)), but instead placing the burden on the challenger "to negative every conceivable basis which might support [the legislation]," *Heller*, 509 U.S. at 320, 113 S.Ct. at 2642 (quoting *Lehnhausen v. Lake Shore Auto Parts Company*, 410 U.S. 356, 364, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351 (1973)); and accepting a legislature's generalizations, *see Heller*, 509 U.S. at 321, 113 S.Ct. at 2643. Ultimately, however, "the reasonableness

13

of each regulation depends upon the relevant facts." *Nebbia v. People of State of New York*, 291 U.S. 502, 525, 54 S.Ct. 505, 511, 78 L.Ed. 940 (1934).

Alabama Code § 36-22-16(a) survives rational basis review. Each of Alabama's 67 counties has a sheriff elected by the registered voters residing therein. This has been true since 1819, when the State entered the Union. "The Constitution of 1819 provided that the sheriff was to be elected by the people in each county 'for the term of three years ... and shall not be eligible to serve either as principal or deputy for the three succeeding years.'" Malcolm Cook McMillan, *Constitutional Development in Alabama, 1798-1901: A Study in Politics, the Negro, and Sectionalism* 68 (1955). "Unlike the constitutions of most of the older Southern states, the Alabama Constitution of 1819 provided for the election of the governor and sheriffs by the people. The election of other officials was entrusted to the legislature." *Id.* at 364. There have been only two deviations from that practice from then until now. First, Article V, Section 138 of the 1901 Constitution extended the sheriff's term to four years. Second, Amendment 35 to the 1901 Constitution (ratified May 11, 1938) provided that a sheriff "shall be eligible to such office as his own successor."

So far as this court can ascertain, the salary of each sheriff

14

and his deputies always has been paid by the county he serves. Nothing in the legislative purpose or text of Alabama Code § 36-22-16(a) suggests that responsibility for compensation of sheriffs and their deputies was being shifted from the State of Alabama to the respective counties by virtue of that enactment. In fact, Alabama Code § 11-12-15(a)(2) lists compensation of sheriffs and deputy sheriffs as a "preferred claim" against the county, second only to maintenance of the county jail in terms of priority.

Further, sheriffs are vested with "complete authority to enforce the state criminal law <u>in their counties</u>." *McMillian v. Monroe County, Alabama*, 521 U.S. 781, 790, 117 S.Ct. 1734, 1739, 138 L.Ed.2d 1 (1997) (emphasis supplied). The phrase "in their counties" must be emphasized, because "the sheriff's jurisdiction is limited to the borders of his county." *Id.* at 791, 117 S.Ct. at 1740. The present-day Jefferson County Sheriff — like the "shire-reeve" of ancient English heritage, who was "chosen locally by the shire's inhabitants" and was "'the keeper of the king's peace" in the "shire" (county)[17] — is the principal law enforcement officer of Jefferson County. He maintains the sovereign's peace when performing his state law enforcement duties. The statutes he enforces are not local ordinances, but the State's criminal laws.

---

[17] *McMillian*, 521 U.S. at 793, 117 S.Ct. at 1741 (quoting 1 William Blackstone, *Commentaries on the Laws of England* 328 (1765)).

The benefits inure directly to the citizens of Jefferson County, from among whom he is chosen by the registered voters. Consequently, there is a rational basis for imposing the duty of compensating the Jefferson County Sheriff on those who select him for office, and are ultimately served by his proper execution of duties. "Thus, [plaintiff's] disagreement with the concept that 'county sheriffs' may actually be state officials is simply a disagreement with the ancient understanding of what it has meant to be a sheriff." *McMillian*, 520 U.S. at 795, 117 S.Ct. at 1741.

Fundamentally, however, revision of Alabama's constitutional and statutory scheme by means of a federal judicial decree "would ignore a crucial axiom of our government: the States have wide authority to set up their state and local governments as they wish." *Id*.

### III. CONCLUSION

For the foregoing reasons, plaintiff's claims are due to be dismissed with prejudice as to all defendants. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this 28th day of June, 2000.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　United States District Judge